```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT

-----------------------------------X
                                   :
JERMAYNE EUBANKS,                  :
        Plaintiff,                 :    CIVIL NO.
                                   :
             v.                    :    3:08-CV-1147 (EBB)
                                   :
TOWN OF EAST HARTFORD, ET AL.      :
        Defendants.                :
                                   :
-----------------------------------X
```

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Jermayne Eubanks ("Eubanks"), sued defendants Town of East Hartford ("Town"), Police Chief Mark Sirois ("Sirois"), Lieutenant James Miller ("Miller"), Officer Michael Lizotte ("Lizotte"), Officer Jay Malley ("Malley") and Sergeant Mark Kelly ("Kelly") (collectively, "Defendants") in a ten-count complaint pursuant to 42 U.S.C. § 1983 and the laws of the state of Connecticut relating to an encounter between Eubanks and Lizotte. Three counts remain following this Court's ruling on Defendants' prior motion to dismiss: excessive force against the Town and Lizotte (Count One); assault and battery against Lizotte and Malley (Count Five); and intentional infliction of emotional distress against Lizotte and Malley (Count Seven). The Town and Malley now move for summary judgment on all remaining counts against them. Eubanks filed no opposition to this motion. For the reasons stated below, the Town and

Malley's motion for summary judgment [Doc. #38] ("Motion") is GRANTED.[1]

## BACKGROUND

I. Factual Background

At all relevant times, Malley was a police officer employed by the Town, a municipality created and existing as a political subdivision of the State of Connecticut under the laws of the State of Connecticut.

On July 31, 2006, at approximately 11:52 p.m., Eubanks was standing in the street on Great Hill Road in East Hartford, Connecticut talking to the driver of a vehicle that was parked on Great Hill Road.  While Eubanks was standing in the street, East Hartford police officer Lizotte was driving alone in his police cruiser on Great Hill Road.  Lizotte was driving in the same direction as the vehicle Eubanks was standing next to was facing.

Lizotte pulled his police cruiser up next to where Eubanks was standing; the passenger side window of his cruiser was rolled down.  Eubanks leaned over and said into Lizotte's open passenger window, "That was rude," referring to the way in which Lizotte had driven up next to Eubanks and the parked vehicle.

---

[1] Because Eubanks did not file any opposition to the Town and Malley's Motion, none of the facts presented in that Motion are contested.  However, the Court is "satisfied that the citation to evidence in the record supports the assertion[s]" alleged by the Town and Malley.  Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2004).

2

Lizotte exited his cruiser and told Eubanks that he was going to arrest him.  In the vicinity of where Eubanks and Lizotte were standing on Great Hill Road, there were other people out on the street, including at least half a dozen teenagers who began to yell at Lizotte.

Lizotte requested backup on his radio.  After Lizotte told Eubanks that he was going to arrest him, Eubanks attempted to make a call on his cellular phone which he was holding in his hand.  Lizotte took Eubanks's cellular phone away from him before he was able to place a call.  Lizotte issued a warning to Eubanks that he would be tasered and then used his department issued taser on Eubanks in order to take him into custody.  The first time Lizotte fired the taser at Eubanks, it was ineffective at subduing him.  The second time Lizotte fired the taser, Eubanks was brought to the ground.

After Eubanks was tasered, he was lying on the ground face down.  While Eubanks was lying on the ground, Lizotte handcuffed him.  While Eubanks was lying on the ground and after he was handcuffed, several East Hartford Police cruisers arrived on the scene.

Eubanks did not see a police K-9 on the scene, but later learned from a friend that there had been one present.

Other than Lizotte, none of the other police officers who responded to the scene said anything to Eubanks.  Other than

3

Lizotte and another officer who helped place Eubanks into Lizotte's police cruiser, none of the other police officers who responded to the scene physically touched Eubanks.

Eubanks was charged with Disorderly Conduct for obstructing traffic in the roadway and Interfering with an Officer in connection with this incident.

II.  Procedural History

Eubanks's complaint commencing this action was filed on July 31, 2008.  On October 13, 2008, Defendants moved to dismiss nine counts of Eubanks's ten count complaint.  [Doc. #15].  On June 19, 2009, the Court granted in part and denied in part Defendants' motion to dismiss.  [Doc. #33].

To date, Eubanks has not amended his complaint.  As a result, the only remaining claims and defendants in this action are as follows: excessive force against the Town and Lizotte (Count One); assault and battery against Lizotte and Malley (Count Five); and intentional infliction of emotional distress against Lizotte and Malley (Count Seven).

On February 1, 2010, the Town and Malley filed a motion for summary judgment.  [Doc. #38].  Eubanks did not file any opposition to the Motion.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is

4

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  It is the movant's burden to show that no genuine factual dispute exists.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

If a non-moving party fails to oppose a motion for summary judgment, "summary judgment, if appropriate, shall be entered against" it.  Fed. R. Civ. P. 56(e).  The Second Circuit "has made clear, however, that where the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  Vermont Teddy Bear Co., Inc., 373 F.3d at 244 (citation and quotations omitted). If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then "summary judgment must be denied even if no opposing evidentiary matter is presented."  Id.

## DISCUSSION

I.  The Town's Liability for Lizotte's Alleged Excessive Force Pursuant to 42 U.S.C. § 1983 (Count One)

The only remaining claim against the Town is for excessive force under Count One of Eubanks's complaint, which alleges that "[t]he tazer [sic] and physical assault on the plaintiff in the

5

course of his arrest and while in custody of the police at the gate to his home as herein described was unreasonable, excessive and in violation of the plaintiff's civil rights under the Fourth Amendment of the US constitution [sic] and Article First of the State Constitution." Eubanks further alleges that "[t]he deployment to the scene of [an] unreasonable number of officers armed with guns and canines was excessive under the circumstances and intended to intimidate."

Eubanks bases his federal claim on 42 U.S.C. § 1983, which provides "a method of vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

In Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), the Supreme Court established that "local governing bodies . . . can be sued directly under [42 U.S.C.] § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690. However, a municipality cannot be held vicariously liable for the acts of its employees, or merely because it employs a tortfeasor. Id. at 694.

To hold a municipality liable under 42 U.S.C. § 1983, a plaintiff must prove that a municipal "policy" or "custom"

caused the deprivation of his rights of which he complains. Board of Comm'rs v. Brown, 520 U.S. 397, 403 (1997). "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged." Id. at 404. (emphasis in original).

    Here, Eubanks alleges a constitutional deprivation at the hands of Lizotte and his colleagues, lower-level municipal employees to whom some authority has been delegated, rather than at the hands of those officials with final policymaking authority. See Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004) (discussing this type of situation). This is essentially *respondeat superior* liability and cannot be imposed pursuant to § 1983. Id. "[W]hen a subordinate municipal official is alleged to have committed the constitutional violation, municipal liability turns on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority." Id.

    The Second Circuit has enumerated ways that a plaintiff can attribute a subordinate's conduct to the actions or omissions of a higher ranking official with policymaking authority. Id. The court in Amnesty America suggested that a plaintiff can establish that a policymaker ordered or ratified the subordinate's actions or show that an authority consciously

7

ignored the subordinate's actions.  Id.  Eubanks, however, has offered no evidence attributing Lizotte and his colleagues' actions to a policymaking authority or that Lizotte's allegedly improper actions were done in conformity with any policy whatsoever.  Consequently, Eubanks's Monell claim against the Town fails and summary judgment in favor of the Town is appropriate.

II.  Eubanks's Claim for Assault and Battery Against Malley (Count Five)

Count Five of Eubanks's complaint, as it pertains to Malley, alleges the following: (a) that "Malley's presence, conduct and handling of the canine created reasonable apprehension in the plaintiff of immediate harm or offensive contact to the plaintiff's person" and (b) that Malley intended to create that apprehension in Eubanks and other civilians present.

Relying on §21 of the Restatement (Second) of Torts, the Connecticut Appellate Court has defined a civil assault as "the intentional causing of imminent apprehension  of harmful or offensive contact in another."  Dewitt v. John Hancock Mutual Life Ins. Co., 5 Conn.App. 590, 594 (1985).

Relying similarly on §13 of the Restatement (Second) of Torts, the Connecticut Supreme Court has held that "[a]n actor is subject to liability to another for battery if (a) he acts

8

intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Alteiri v. Colasso, 168 Conn. 329, 334, n.3 (1975).

Summary judgment on this claim as applied to Malley is appropriate because the undisputed facts—Eubanks's own deposition testimony—establishes that Malley had no physical or verbal interaction with Eubanks and that Eubanks was not even aware of the presence of a police K-9 at the time of the incident. Consequently, no actions of Malley's could have possibly created any apprehension of immediate harm in Eubanks. Furthermore, no police officer had any contact with Eubanks at all other than Lizotte and an unidentified officer who aided Eubanks in entering a police cruiser. Consequently, because of the absence of any evidence that Malley intended to create a harmful or offensive contact with Eubanks, summary judgment is appropriate on this claim as applied to Malley.

III. Eubanks's Claim for Intentional Infliction of Emotional Distress Against Malley (Count Seven)

Eubanks claims that Malley committed the tort of intentional infliction of emotional distress. For him to prevail on this claim, four elements must be established. It must be shown: "(1) that the actor intended to inflict emotional

distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Diamond v. Yale University, 66 Conn. App. 764, 765-66 (2001) (internal quotations omitted).

The Connecticut Supreme Court has defined extreme and outrageous conduct as that which "exceeds all bounds usually tolerated by decent society." Carrol v. Allstate Ins. Co., 262 Conn. 433, 443 (2003) (quoting Petyan v. Ellis, 200 Conn. 243, 254 n.5 (1986)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." Id. The conduct must be such that "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. Measured against this high threshold, Eubanks's claim against Malley fails.

Here, the only allegation in Eubanks's complaint specifically referring to Malley, other than that he was an East Hartford Police Officer, is that, "Defendant Malley's presence, conduct and handling of the canine created reasonable

10

apprehension of immediate harm or offensive contact to the plaintiff's person." This unsupported allegation, along with Eubanks's own testimony that he did not see a police K-9 at the scene and that no other officers other than Lizotte said anything to him or physically touched him, other than to place him in the back of a police cruiser, demonstrates that any alleged conduct attributable to Malley in no way rises to the level of extreme and outrageous behavior as to be actionable under Connecticut law.

Having decided that Eubanks's claim for intentional infliction of emotional distress against Malley fails on its face, there is no need to consider the severity of the injuries allegedly suffered by Eubanks or whether Malley is entitled to governmental immunity.

## ORDER

For the foregoing reasons, the Town and Malley's motion for summary judgment [Doc. #38] is GRANTED. Furthermore, counsel for all remaining parties are ordered to appear on July 16, 2010 at 10:00 a.m. for a status conference.

                                        SO ORDERED

                                    _____/s/_____
                                    ELLEN BREE BURNS
                                    SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 6th day of July, 2010.